IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

UNITED STATES OF AMERICA,

              Plaintiff,

vs.

JIMMY JAMES MAMOTH JR.,

              Defendant.

No.1:19-CR-00146-MAC

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The Defendant, Jimmy James Mamoth, Jr., was indicted and charged with a violation of 18 U.S.C. § 2113(a) (Attempted Bank Robbery). Mamoth proceeds *pro se* in his defense, with standby counsel appointed by the court.

Pending before the undersigned is Mamoth's *Motion to Suppress*. (Dkt. No. 110.) The Government filed a response to the Defendant's motion (Dkt. No. 116), and the undersigned magistrate judge heard testimony and oral argument on July 9, 2020. On July 13, 2020, Mamoth entered a plea of guilty before United States District Judge Marcia Crone. (Dkt. Nos. 139, 141.) As a result of Mamoth's guilty plea, Judge Crone issued an order denying his pending *pro se* motions, including the Motion to Suppress addressed in this Report. (Dkt. No. 143.) On October 13, 2020, Mamoth filed a *pro se* motion to withdraw his guilty plea. (Dkt. No. 159.) On November 20, 2020, in a status conference conducted by Judge Crone via video, Mamoth asked the court for permission to withdraw his guilty plea. (Dkt. No. 176.) Judge Crone rejected Mamoth's plea agreement, and consequently, he withdrew his guilty plea. (Dkt. 177.) On December 7, 2020,

Mamoth filed a motion to adopt previously filed motions, and Judge Crone granted his request in part. (Dkt. Nos. 183, 184.) His trial is currently set for January 11, 2021. (Dkt. No. 179.)

After careful consideration of Mamoth's request and the evidence of record, the undersigned recommends denying the motion to suppress.

## I. DEFENDANT'S MOTION

Mamoth seeks to suppress the evidence seized as a result of the stop and search of his vehicle, including a computer and cell phone that were searched pursuant to multiple search warrants (one on October 2, 2019, two on October 11, 2019, and one on June 4, 2020).[1] At the hearing, he advanced several legal theories in support of his request. First, Mamoth claims that there was no probable cause for the initial stop. Second, he claims that the inventory vehicle search was conducted in violation of the Liberty County Sheriff Department's ("LCSD") protocol. Third, he challenges the legal sufficiency of the search warrants issued for his vehicle, cellphone, and computer.

## II. GOVERNMENT'S RESPONSE

The Government asks the court to deny Mamoth's motion because (1) the traffic stop was based on probable cause; and (2) the search warrants that followed were based on probable cause and executed in good faith.

## III. EVIDENCE

During the hearing on the instant motion, the Government called FBI Agent Nathan Moss who testified to the facts surrounding Mamoth's arrest and the subsequent seizure of evidence. Court's Exhibit 1 (Dkt. No. 136-1, "Court's Ex. 1") includes the search warrant applications,

---

[1] Mamoth's motion lists search warrant applications dated October 2, October 11, and October 17, 2019 and June 4, 2020. However, the undersigned assumes the October 17 reference was made in error since there is no application dated October 17. Rather, there are two dated October 11, 2019.

2

supporting affidavits, and actual warrants issued in this case. The Defendant's Exhibit 2 (Dkt. No.

136-2, "Def. Ex. 2")) includes the following:

1. TDPS Supplemental Report by Trooper Preston Gustavsen
2. Dispatch Report
3. Investigator McQueen's Report Dated 10/01/2019
4. Report of Forensic Examination dated April 27, 2020
5. FBI evidence entry dated 10/7/2019
6. Deputy Daniel McMullan Report dated 9/27/2019
7. FBI Synopsis of Incident dated 10/4/2019
8. LCSD Vehicle Inventory
9. Personal Notes

Agent Moss testified that he responded to the Texas First Bank at the request of local law

enforcement to investigate an attempted bank robbery on September 27, 2019. He testified that a

witness reported seeing a man wearing a mask from the movie "Scream" carrying a bag heading

toward the bank. This witness assumed the man was a potential robber and honked his horn and

accelerated toward him. The suspect ran into the woods behind the bank. Agent Moss testified

that the witness was familiar with the area and knew there was only one route exiting the wooded

area where the suspect fled. The FBI Report states that the witness saw a tan Toyota Tundra pickup

truck exit the woods from this dirt road exit at a high rate of speed. (Def. Ex., p. 32.) The witness

recorded the license plate number and provided it to law enforcement. (*Id*.) LCSD officers were

dispatched and Texas Highway Patrol stopped the tan Tundra with a matching license plate in

Cleveland, Texas, approximately 45 minutes after the incident was reported. (*Id.*) Officers

completed a search of the wooded area, but did not recover any items related to the robbery

(weapon, mask, or hoodie). (Def. Ex. 2, p. 30.)

Agent Moss testified that he reviewed the still and video footage from the bank which

showed the suspect lurking around the bank wearing a "Scream" mask, gloves, a heavy jacket, and

jeans. These pictures are contained in Court's Ex. 1, p. 4.

Trooper Gustavsen's supplemental report states that he was advised by LCSD dispatch to locate a brown Toyota Tundra pickup truck, with license plate MHZ4119, that was connected to a possible bank robbery. (Def. Ex. 2, p. 1.) Trooper Gustavsen located the vehicle and initiated a traffic stop. (*Id*.) Mamoth immediately pulled to the side of the road and exited the vehicle. (*Id.*) He was wearing a ball cap, glasses, white shirt, blue jeans, and black and white shoes. (*Id*.) Mamoth was sweating and his lower pant legs and shoes were wet and muddy. (*Id*.) Trooper Gustavsen looked "inside the truck and could see a black satchel that a witness described the suspect wearing at the time of the incident." (*Id*.) Mamoth did not give consent for Trooper Gustavsen to search his vehicle. (*Id*.) Mamoth was transported to the Cleveland Annex pending investigation of the attempted bank robbery, and his vehicle was towed and stored for further investigation. (*Id*., Def. Ex. 2, p. 11.) Mamoth was photographed wearing black and white shoes and blue jeans that were wet and dirty, matching the jeans and shoes captured on the bank surveillance video and described by the witness.[2] (Court's Ex. 1., 7.)

After detaining Mamoth, LCSD officers and FBI agents conducted a tow inventory of the vehicle. (Court's Ex. 1, p. 5.) This inventory search revealed a duffel bag containing a Halloween-style mask matching the mask worn by the suspect outside Texas First Bank, two dark hooded jackets, light-colored gloves, plastic bags, and an airsoft style plastic replica gun meant to resemble a Beretta 9mm pistol. (*Id.*)

On October 2, 2019, FBI Agent Moss presented an application for a search warrant to search Mamoth's Toyota Tundra to Magistrate Judge Keith Giblin.[3] (Court's Ex. 1, p. 1.) Agent

---

[2] It is worth noting that the suspect's tennis shoes were unique in that they had white soles, a black upper part and a white arrow. The brand of shoe was unrecognizable for lack of brand insignia.

[3] The application also asked for the Government to seize "information" that constitutes fruits, evidence and instrumentalities of Mamoth's alleged violation of 18 U.S.C. § 2113, including *inter alia,* any weapons or tools that could be used for bank robbery, electronic communication equipment (including computers and thumb drives), and any documents or records, including hard drives. (Court's Ex. 1., p. 16.)

Moss's application contained an application and affidavit that states there is "probable cause to believe that there is evidence of a crime, fruits of a crime, and other items illegally possess[ed] in violation of [18 U.S.C. § 2113]." (*Id*., p. 2.)  The application contained photographs of the suspect at the crime scene and Mamoth after his arrest (which showed the same blue jeans and tennis shoes) and the items collected as a result of the LCSD tow inventory.  The search warrant application was approved by Judge Giblin, and consequently FBI agents seized two USB storage flash drives, one Black Samsung cell phone, one laptop computer, and one Black LG cell phone #L59911005.  (*Id.*)  Agent Moss submitted applications for search warrants to search these electronic devices, including the "information" associated with these devices, which were also approved by Judge Giblin.  (Court's Ex. 1, p. 17-60.)

## IV.  DISCUSSION

Defendant moves to suppress all evidence derived from:

> Traffic Stop on September 27, 2019,
> LCSD Vehicle Inventory,
> Search Warrant dated October 2, 2019,
> Search Warrant dated October 11, 2019,
> Search Warrant dated October 17, 2019, and
> Search Warrant dated June 4, 2020.

(Dkt. No. 110.)  Mamoth alleges that his initial stop, seizure, detention and arrest lacked probable cause and that the resulting tow inventory was in bad faith because it was solely for investigative purposes.  He claims that the subsequent warrants are "fruits of the poisonous tree," insufficient on their face, overbroad, lack particularity, and violat his rights under the Fourth and Fifth Amendments, and Rule 41 of the Federal Rules of Criminal Procedure.  He claims that the subsequent searches of his electronic devices from January 8, 2020 to April 21, 2020 were "illegal."  (*Id.*)

The Government responds that arresting officers had probable cause for the initial stop and arrest and that, consequently, all searches were valid under the Fourth Amendment.

A. *Traffic Stop*

Mamoth contends that the initial traffic stop violated the Fourth Amendment's prohibition of unreasonable searches and seizures because the officer lacked probable cause to believe he was involved in the attempted bank robbery.  A traffic stop must be  "(1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'"  *United States v. Young*, 816 F. App'x 993, 996 (5th Cir. 2020) (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

The evidence shows that an eyewitness to the crime, who was in his vehicle in the bank parking lot, saw the suspect run into the woods behind the bank.  Agent Moss testified that the witness was familiar with the area and located the roadside exit of the wooded property where the suspect fled.  The witness did not see the suspect get into the vehicle, but saw a vehicle driving out of the wooded exit at a high rate of speed. The witness followed the vehicle and was able to identify it as a brown Toyota Tundra, with Texas license plate #MHZ4119.  (*Id.*)  Forty-five minutes after the incident, a DPS Trooper, P. Gustavsen, located the suspect vehicle and conducted a traffic stop. (Def. Ex. 2., p. 1.)

Trooper Gustavsen had an accurate description of the suspected getaway vehicle from an eyewitness, which included the make and model and a precise license plate number.  He recognized the vehicle when it was still within Liberty County.  The exigencies of the situation made Trooper Gustavsen's course of action—the traffic stop of Mamoth's vehicle—imperative. Accordingly, the undersigned finds that the totality of the circumstances and facts within Gustavsen's knowledge at the time of Mamoth's traffic stop is sufficient for a reasonable person to conclude that the tan

Toyota Tundra bearing license plate #MHZ4119 was involved in an attempted bank robbery. *See Chambers v. Maroney*, 399 U.S. 42, 44, 46–47 (1970) (finding probable cause for stop and arrest where witnesses described a "light blue compact station wagon," which was spotted two miles from crime scene, less than an hour after the crime occurred); *United States v. Baldwin*, 644 F.2d 381, 384 (5th Cir. 1981) (finding probable cause to arrest on suspicion of robbery where defendant's truck was positively identified as the getaway vehicle and witnesses had provided police descriptions generally fitting the defendant); *United States v. Breedlove*, 444 F.2d 422, 424 (5th Cir. 1971) (an accurate description of a getaway vehicle and occupants constitutes probable cause for traffic stop).

### B. Vehicle Seizure and Inventory Search

Mamoth claims his vehicle was seized and "illegally searched" without probable cause or a legitimate warrant. "Under the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband." *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016) (citing *United States v. Ross*, 456 U.S. 798, 807-09 (1982)). "Probable cause in this context consists of trustworthy facts and circumstances within the officer's knowledge [that] would cause a reasonably prudent man to believe the car contains contraband." *United States v. Guzman*, 739 F.3d 241, 246 (5th Cir. 2014) (alteration in original) (internal quotation marks omitted).

As an initial matter, the undersigned finds there was probable cause to search Mamoth's vehicle at the traffic stop.[4] Despite the evidence supporting a probable cause search of Mamoth's vehicle, officers waited and obtained a search warrant. After his arrest but prior to the issuance of the search warrant, the LCSD completed a vehicle inventory of Mamoth's truck. (Def. Ex. 2, p.

---

[4] The eyewitness description of the vehicle, the proximity of Mamoth's vehicle to the crime scene, his sweaty appearance, and muddy shoes and pants constitute probable cause that the car contained contraband.

34.)  The relevant items identified as a result of the inventory search of his vehicle included: a bag with a beige strap, air soft pistol, "Scream" mask, clothing that matched the eyewitness's description, cell phone, Dell computer, and Clorox wipes.  Mamoth seeks to suppress this evidence.

The Government responds that the search of the vehicle was lawful because it was incident to Mamoth's arrest and there was probable cause to believe the Toyota Tundra was the vehicle used to escape the scene of the attempted robbery.  Notwithstanding the foregoing, the undersigned finds that the search was lawful because it constituted an "inventory search."

The inventory search doctrine permits law enforcement officers to search seized property, without a warrant or probable cause, in order to take an inventory of the property, provided the inventory search is conducted pursuant to reasonable, standardized police procedures. *See Colorado v. Bertine*, 479 U.S. 367, 375 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 374 (1976).  Adherence to standardized police procedures ensures that an inventory search is not merely "a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Thus, an inventory search of a seized vehicle is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger.  *United States v. McKinnon*, 681 F.3d 203, 209–10 (5th Cir. 2012).

"Warrantless searches and seizures are 'per se unreasonable unless they fall within a few narrowly defined exceptions.'"  *United States v. Kelly*, 302 F.3d 291, 293 (5th Cir. 2002).  One such exception for warrantless seizures is the "community caretaking" exception that originated in the Supreme Court's decision in *South Dakota v. Opperman*, 428 U.S. 364 (1976).  "Public

caretaking typically applies when the owner of the vehicle has been arrested while the vehicle is on the public streets." *Trent v. Wade*, 776 F.3d 368, 387 n.13 (5th Cir. 2015). This exception allows police to impound the vehicle to protect the vehicle, its contents, and the surrounding roadways. *Id.* Thus, officers may impound vehicles in furtherance of public safety and community caretaking functions by seizing and removing vehicles that either impede traffic or threaten public safety and convenience. *Opperman*, 428 U.S. at 368; *McKinnon*, 681 F.3d at 209–10 (finding that a police officer's decision to impound a vehicle was reasonable under the Fourth Amendment where the vehicle was parked in a public place and could have become a nuisance, and the vehicle could not be lawfully driven away from the scene).

The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *See Simmons v. United States*, 390 U.S. 377, 389–90 (1968). Mamoth fails to develop any persuasive reason that suggests how the impoundment and resulting inventory search were unlawful under the community caretaking exception or violative of LCSD policy.[5] Therefore, the undersigned finds that the inventory search was reasonable and remained within the parameters of the inventory search exception under the Fourth Amendment.

C.      *Search Warrants*

Mamoth challenges the validity of four search warrants issued in this case. The applications and warrants were admitted as Court's Exhibit 1:

---

[5] Mamoth attempted to introduce a copy of the LCSD inventory policy, but the Government's objection to the evidence (for failure to lay a proper foundation) was sustained.

| Date Signed | Property to be Seized |
|---|---|
| 10/2/2019 | Information associated[6] with a 2009 Toyota Tundra VIN# 5TPEV54179X072972 bearing Texas registration MHZ 4119, registered to Roger Mamoth |
| 10/11/2019 | Information associated with a Black LG cell phone #L59911005, herein referred to as the Device (as described in Attachment B) |
| 10/11/2019 | Information associated with an HP laptop computer Model#: 15-da0012dx, S/N: CND81955RQ herein after referred to as the Device (as described in Att. A) |
| 6/4/2020 | Information associated with a cellular telephone assigned to the call number 832-459-9903 |

Mamoth's arguments are vague and unfounded, but he generally claims that the warrants are "insufficient on their face," "without probable cause," "overbroad," and based on an unlawful search of his vehicle. At the hearing, he also challenges the timeliness of the execution of the warrants for information related to the cell phones and computer. The Government responds that the warrants were supported by probable cause and therefore, the court need not address the Defendant's claim that the officers did not execute the warrants in good faith.

---

[6] "Information" is defined in Attachment B to the application as:

"1. Any weapons or tools that could be used for bank robbery, or incidental crimes. Any clothing, masks, bags, or gloves used to help frustrate law enforcement, or disguise identity of persons involved, or conceal items, that also matches surveillance images obtained by law enforcement.

2. Electronic communication equipment used to facilitate bank robbery or crimes related to, e.g. computers, thumb drives and other external computer drives, facsimile machines, currency counting machines, digital, voice and alpha pagers, cellular telephones, and telephone answering machines. Additionally, the information generated and stored by the aforementioned electronic and communication equipment on computer software, tapes and disks, audio tapes, internal and external memory or data storage media.

3. Any documents or records produced and maintained by: digital cameras, cartridges, computers, commercial software and hardware, computer disks, disk drives, monitors, printers, modems, disk application programs, system disk operating systems, magnetic media, scanners, video cameras, hard drives and other computer related operations equipment."

(Court's Ex. 1, p. 12.)

The Magistrate Judge who issues the search warrant has the task of making the decision whether, "given the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Kim*, 677 F. Supp. 2d 930, 938 (S.D. Tex. 2009). A valid search warrant may be issued only upon a finding of probable cause. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). The information necessary to show probable cause must be contained within a written affidavit given under oath. *Id.* Probable cause does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007).

The initial 10/2/2019 search warrant application for Mamoth's vehicle included a 9-page affidavit from Agent Moss which summarized the eyewitness account and subsequent identification of Mamoth's truck. Also attached were the surveillance footage that depicted someone of Mamoth's physical stature lurking around the bank and then later running towards the wooded area behind the bank, a tow inventory ledger, and photographs that show a Halloween mask worn by the suspect, dark hooded jacket, and airsoft style plastic replica gun. (Court's Ex. 1, p. 3-9.) The affidavit states that upon being taken into custody, Mamoth was wearing black and white shoes and blue jeans that were wet and dirty and matched the jeans and shoes captured on surveillance video and described by the witness. *Id.* The affidavit also contained photographs of his shoes and muddy pants. *Id.*

Based on the evidentiary support attached to the affidavit, the undersigned finds that the initial search warrant affidavit is not "bare bones," but provides sufficient information and evidence to constitute probable cause. The evidence uncovered as a result of the initial search

11

revealed more evidence on which to base the following warrant applications, and details of those findings are included in the affidavits with sufficient particularity.

At the suppression hearing, Mamoth raised a vague objection that the execution of the 10/11/2019 computer and phone search warrants exceeded his understanding of the temporal limitations of the warrant. Mamoth suggested that the information seized as a result of the search warrant (computer hard drive and phone) were not "searched" within the execution deadline of October 22, 2019. (Court's Ex. 1, p. 40.) However, Federal Rule of Criminal Procedure Rule 41(e)(2)(B) states that a warrant may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information, the time for executing the warrant refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review. Courts have consistently "permitted some delay in the execution of search warrants involving computers because of the complexity of the search" and they often restrict their "analysis of the delay in executing . . . warrants [to] consider[ing] only whether the delay rendered the warrants stale." *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017)

In this instance, Mamoth has not shown (1) that there was a delay in the seizure or on-site copying of his electronically stored information that violates Rule 41, or (2) that any alleged delay renders the warrant stale.[7]   Accordingly, the undersigned finds that Mamoth's challenge to the timeliness of the search warrant execution fails.

D.    *Good Faith*

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on

---

[7] The Fifth Circuit has recognized that "a delay of several months or even years between the seizure of electronic evidence and the completion of the government's review of [it] . . . is reasonable" and does not render the warrant stale. *United States v. Jarman*, 847 F.3d 259, 267 (5th Cir. 2017).

the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *United States v. Leon*, 468 U.S. 897, 921–25 (1984)). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Pope*, 467 F.3d 912, 917 (5th Cir. 2006) (citing *Leon*, 468 U.S. at 922 n. 23).

As discussed above, the search warrants issued were supported by probable cause, so the issue as to whether they were executed in good faith is irrelevant. But, assuming *arguendo* they lacked probable cause (as Mamoth suggests), there is no evidence that the officers acted without a good faith belief that the warrant was valid and authorized their conduct. Moreover, there is no evidence to suggest that the search warrant applications were insufficient and/or not duly authorized by the magistrate judge.

## V. CONCLUSION

"The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978) (citations omitted). Mamoth has failed to demonstrate that the initial traffic stop, inventory search, and search warrants lacked probable cause or were conducted in violation of his constitutional rights.

Accordingly, the undersigned recommends denying Mamoth's Motion to Suppress. (Dkt. No. 110.)

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed

13

within **seven (7)** days after being served with a copy of this report, and (4) no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(c) (2009); Fᴇᴅ. R. Cɪᴠ. P. 72(b)(2); Local Rule CV-72(c).  A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. See 28 U.S.C. § 636(b)(1) (2009); Fᴇᴅ. R. Cɪᴠ. P.  72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within **seven (7)** days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

SIGNED this 22nd day of December, 2020.

Zack Hawthorn
United States Magistrate Judge

14